# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NICOLE TEMPESTA and ANTHONY TEMPESTA,**

    Plaintiffs,

**UNITED HEALTHCARE INSURANCE COMPANY,**

    Involuntary Plaintiff,

    v.                        Case No. 15-CV-321

**SCOTTSDALE INDEMNITY COMPANY and FEDERAL HOME LOAN MORTGAGE CORPORATION,**

    Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Nicole and Anthony Tempesta sue Scottsdale Indemnity Company and Federal Home Loan Mortgage Corporation ("Freddie Mac") for injuries Nicole Tempesta sustained when she slipped and fell on ice located on the sidewalk at the end of her driveway. The Tempestas contend that the ice resulted from a defective sump pump at an adjacent property and that Freddie Mac is liable for their damages based on its acquisition of title of the property via foreclosure a few months earlier. The defendants move for summary judgment on the Tempestas' claims. The issues have been fully briefed and are ready for resolution. For the reasons that I explain in this decision, the defendants' motion for summary judgment is denied.

# JURISDICTION

Federal Home Loan Mortgage is a corporate entity organized and existing pursuant to the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. § 1451, *et seq*. It removed this action pursuant to 12 U.S.C. § 1452(f)(3), which provides that, "any civil or other action, case or controversy in a court of a State . . . to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation, without the giving of any bond or security, to the district court of the United States for the district and division embracing the place where the same is pending . . . by following any procedure for removal of causes in effect at the time of such removal." Accordingly, its presence in this action means that jurisdiction is proper.

# UNDISPUTED FACTS

Nicole and Anthony Tempesta are husband and wife and reside at 3212 Lakeview Circle in Racine, Wisconsin. (Pl.'s Resp. to Defs.' Proposed Findings of Fact ("Pl.'s Resp.") ¶¶ 1-2, Docket # 26.) The Tempestas have lived at the Lakeview Circle property for about 12 to 13 years. (*Id.* ¶ 3.) Nicole Tempesta was injured on January 9, 2013, when she slipped and fell on ice located on the sidewalk at the end of her driveway. (*Id.* ¶ 4.) The sidewalk on which the ice was located was a public sidewalk. (*Id.* ¶ 5.) An apron exists beyond the sidewalk at the bases of the driveways at 3206 Lakeview Circle and 3212 Lakeview Circle. (Pl.'s Statement of Additional Facts ("Pl.'s SOF") ¶ 8, Docket # 26.) The apron at the base of the driveways is shared by the two property owners at 3206 and 3212 Lakeview Circle. (*Id.* ¶ 9.) The apron is raised higher than the sidewalk, so when the water runoff reached the apron, it would pool and start to run north toward the Tempestas' property. (*Id.* ¶ 10.)

Anthony Tempesta testified that when the sump pump at 3206 Lakeview Circle would malfunction, water would back up, shoot straight into the air, then run down the driveway onto the sidewalk instead of flowing out the discharge pipe and into the street. (Pl.'s Resp. ¶ 8.) Water would come out from the top of the sump pump where the sump pump connected to the downspout and both fed into the underground discharge pipe. (*Id.* ¶ 9.) When there was excessive activity from the sump pump, water would make its way onto the Tempestas' property. (*Id.* ¶ 10.)

J.L. Miller had purchased the property located at 3206 Lakeview Circle in 2010 or 2011. (*Id.* ¶ 12.) Miller lived at the property located at 3206 Lakeview Circle for about two years. (*Id.* ¶ 13.) It was during the residency of Miller at the property located at 3206 Lakeview Circle that water started to shoot out the top of the sump pump. (*Id.* ¶ 14.) Anthony Tempesta testified that sometime in 2010 or 2011, the sump pump either became disconnected from the underground discharge pipe or the underground pipe was plugged and the water had nowhere to go but up and onto the driveway, instead of down the pipe. (*Id.* ¶ 16.) Anthony alerted Miller to the problem with water shooting straight up from the sump pump. (*Id.* ¶ 17.) In 2010 and 2011, Anthony complained to various City of Racine departments about the water problem. (*Id.* ¶ 19.)

Freddie Mac acquired title to the property located at 3206 Lakeview Circle after foreclosure, by deed dated September 20, 2012. (*Id.* ¶ 6.) Freddie Mac sold the property on or about August 15, 2013. (*Id.* ¶ 7.) At the time of Nicole Tempesta's accident, the property located at 3206 Lakeview Circle was occupied by Kim Beascochea. (*Id.* ¶ 21.) Town & Lake Realty was called upon to provide services with regard to the property. (*Id.* ¶ 24.) Sandra Mallas, a broker with Town & Lake Realty, was hired by Federal Home Loan Services to be

3

the listing agent for the property sometime in September 2012. (*Id.* ¶¶ 22-27.) Mallas testified that she could not touch the property unless it was vacant and that an eviction did not happen until the end of May 2013. (*Id.* ¶ 29.) The property was listed for sale on May 23, 2013. (*Id.* ¶ 28.) Before listing the property, Mallas was responsible for periodically driving by the property to see if it was still occupied. (*Id.* ¶¶ 31-32.) Mallas would note the condition of the property and communicate those notes to Federal Home Loan Services. (Pl.'s SOF ¶¶ 29-30.) Mallas could not recall whether she noted ice on the driveway or sidewalk of the property. (*Id.* ¶ 31.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir.

4

2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

The defendants move for summary judgment on the Tempestas' negligence, loss of consortium, and nuisance claims. These are state law claims; therefore I must apply Wisconsin law to them as declared by the Wisconsin Supreme Court. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001); *see also Campbell v. Federal Home Loan Morg. Corp.*, No. 07-CV-1428, 2009 WL 395207 (S.D. Ind. Feb. 13, 2009) (applying Indiana law to negligence claim against Freddie Mac). If the Wisconsin Supreme Court has not decided an issue, "the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *Pate*, 275 F.3d at 666.

   1.   *Negligence Claim*

Nicole Tempesta was injured when she fell on ice on the public sidewalk abutting Freddie Mac's property. Under Wisconsin law, the "well-established" rule is that "when ice or snow has accumulated on a public sidewalk abutting private property, the property owner owes no duty to passers-by either to clear the sidewalk or to scatter abrasive material thereon." *Holschbach v. Washington Park Manor*, 2005 WI App 55, ¶ 10, 280 Wis. 2d 264, 270, 694 N.W.2d 492, 495. The property owner may, however, incur liability for artificial

5

accumulations. *Id.* Whether a patch of ice was a natural or artificial condition is a question of law. *Id.*

Freddie Mac's arguments are two-fold. First, it argues that Freddie Mac neither owed a duty nor breached a duty to the Tempestas because there is no evidence that Freddie Mac had any notice of the alleged defect in the sump pump system. (Defs.' Br. at 6-7, Docket # 23.) Second, it argues that the Tempestas have presented no admissible evidence to show that Nicole Tempesta fell because of an artificial accumulation of ice. (*Id.* at 7-9.) I will address each argument in turn.

      1.1    Duty

As to the issue of duty, it is undisputed that Freddie Mac acquired title to the property located at 3206 Lakeview Circle in September 20, 2012, prior to Nicole Tempesta's January 9, 2013 accident. (Pl.'s Resp. ¶ 6.) It is also undisputed that the property was occupied at the time of the accident and that Freddie Mac's listing agent could not enter the property until it was vacant. (*Id.* ¶¶ 21, 29.) Freddie Mac acknowledges and cites the Wisconsin Supreme Court in *Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. 2d 734, 745, 284 N.W.2d 55, 61 (1979) for the proposition that a property owner is not immune from liability solely because it does not possess or control the property. (Defs.' Br. at 6.) Freddie Mac argues that "Plaintiff's own case law acknowledges that lack of control and lack of notice are relevant to the ultimate question of whether an owner 'exercise[d] ordinary care in the maintenance of the premises under all circumstances.'" (Defs.' Reply Br. at 5, Docket # 30 (quoting *Pagelsdorf*, 91 Wis. 2d at 745, 284 N.W.2d at 61.))

But Freddie Mac's own statement shows why summary judgment is not appropriate as to duty. *Pagelsdorf* instructs that lack of notice does not immunize a property owner from

6

liability. Rather, "[i]ssues of notice of the defect, its obviousness, control of the premises, and so forth are all relevant only insofar as they bear on the ultimate question: Did the landlord exercise ordinary care in the maintenance of the premises under all the circumstances?" 91 Wis. 2d at 745, 284 N.W.2d at 61. In other words, notice and control are relevant but other factors may also be considered. Here, although it is not disputed that Freddie Mac did not have actual notice of the alleged defect and did not have control of the premises, the Tempestas have set forth sufficient other evidence for a rational finder of fact to evaluate whether Freddie Mac exercised ordinary care. A fact finder could consider the evidence that the Tempestas had been experiencing difficulties with the sump pump discharge for years (Pl.'s Resp. ¶¶ 16, 19), that the water runoff from the 3206 Lakeview Circle property was so constant that algae grew along the Tempesta's curb line (Pl.'s SOF ¶ 18), that the Tempesta complained about ice on the apron to the prior residents of 3206 Lakeview Circle (*id.* ¶ 12), that the Tempestas notified the City of Racine about the ice problem originating from the 3206 Lakeview Circle property (*id.* ¶ 16), and the fact Freddie Mac had title to the property, and determine that Freddie Mac should have known about the alleged defect and remedied it. None of this is to say that the Tempestas will or will not ultimately prevail. But, because no one factor is dispositive and these are all factors to be considered in deciding whether the owner exercised ordinary care, summary judgment is not appropriate.

The Wisconsin Supreme Court's decision in *Adlington v. City of Viroqua*, 155 Wis. 472, 144 N.W. 1130 (1914) is also instructive. In *Adlington*, the plaintiff was injured by falling on an accumulation of ice on the sidewalk. *Id.* at 1131. The ice accumulation was formed from water discharged near the walk by way of a conveyor pipe leading to and

7

taking water from a building abutting the sidewalk. *Id.* There was a culvert designed to afford a channel for the water under the walk, but it had been obstructed and useless for a considerable length of time. *Id.* The court found that the obstructed condition of the culvert called for repairs and it was the duty of the property owner to remedy the defect. *Id.* at 1132. The court stated that the property owners "knew, or ought to have known, that unless remedied the accumulation of water deposited near the walk from their conveyor pipe would create a nuisance by rendering the walk unsafe." *Id.* The property owner argued that the premises was leased and occupied at the time of an accident and thus the tenant was negligent for the unsafe condition, not the property owner. *Id.* at 1132-33. The court responded: "Counsel overlook the fact that the duty to repair is imposed on the owner. Therefore the fault which rendered the manner of discharging the water from appellants' premises unreasonable and negligent, was their own." *Id.* at 1133.

Simiarly here, Freddie Mac argues that it did not possess or control the property and as the putative landlord, had no right to enter the property. As the court noted in *Adlington*, not occupying the premises does not relieve the owner of the duty to repair. Additionally, Wis. Stat. § 704.05(2) provides that a landlord "may upon advance notice and at reasonable times inspect the premises, make repairs and show the premises to prospective tenants or purchasers." Thus, the fact that the premises was occupied does not extinguish the property owner's duty to repair. As the property owner, Freddie Mac did have a statutory right to enter the property with notice and at a reasonable time. *Adlington*'s reasoning also weighs against summary judgment as to the duty of care owed to the Tempestas.

8

### 1.2 Natural or Artificial Accumulation

Freddie Mac argues that the Tempestas have presented no admissible evidence to show that Nicole Tempesta fell because of an artificial accumulation of ice. It argues that the Tempestas simply rely on Anthony Tempesta's speculation that the sump pump became disconnected from the underground discharge pipe or that the discharge pipe was plugged. Freddie Mac argues that the Tempestas have failed to "identify a witness, let alone an expert, who can legitimately identify a specific defect in the sump pump and/or underground discharge pipe that caused water to discharge onto the public sidewalk." (Defs.' Reply Br. at 3.)

For an accumulation of ice to be considered artificial there must be evidence presented which demonstrates: (1) that something man-made (such as a drainage system or a downspout) was defective; and (2) that such defect caused the icy condition. *Gruber v. Vill. of North Fond du Lac*, 2003 WI App 217, ¶ 18, 267 Wis. 2d 368, 380, 671 N.W.2d 692, 697. However, where land is graded or structures are built in the usual and ordinary way and not for the purpose of accumulating and discharging water on a sidewalk, drainage which results only incidentally and is not caused by negligent maintenance is deemed natural and ordinary. *Corpron v. Safer Foods, Inc.*, 22 Wis. 2d 478, 484, 126 N.W.2d 14, 17 (1964) (citations omitted). Additionally, where a man-made drainage system or downspout is properly working but water manages to "find[ ] its way from the rear of the building to a sidewalk" such accumulation is not considered artificial because while it was man-made it was not defective. *Gruber*, 2003 WI App 217, ¶ 18 (citing *Plasa v. Logan*, 261 Wis. 640, 644-647, 53 N.W.2d 720 (1952)). Conversely, when a property owner by negligent omission (such as failing to properly repair a drainage system) allows water to accumulate where only

9

a normal amount of water would be anticipated, then an artificial condition exists. *Sambs v. City of Brookfield*, 66 Wis. 2d 296, 306, 224 N.W.2d 582, 588 (1975).

Here, that the sump pump is man-made is not in dispute; however, the issue remains whether the sump pump was defective. Once again, Freddie Mac argues that the Tempestas cannot show that the sump pump was defective because Anthony Tempesta could not testify as to a specific defect in the sump pump and/or the underground discharge pipe and they have named no other witnesses, including experts, who can pinpoint the alleged defect. I agree that the Tempestas have not offered evidence of a specific defect in the sump pump and that the Tempestas concede they never examined or inspected the sump pump.

But even though neither Anthony nor Nicole Tempesta could testify as to how, exactly, the sump pump was defective, both testified as to their observations of the sump pump's activity. As Nicole Tempesta testified in response to the question of whether anyone ever told her the sump pump was malfunctioning, she responded "You could see it." (Declaration of Christopher P. Riordan ("Riordan Decl.") ¶ 3, Exh. A, Deposition of Nicole Tempesta at 73, Docket # 25-1.) Anthony Tempesta testified that instead of the water from the sump pump located at 3206 going out of the discharge pipe into the street "like it should," the water would "shoot straight up in the air and land on the driveway of 3206 and run down the driveway of their property onto the sidewalk and the apron." (Riordan Decl. ¶ 4, Exh. B, Deposition of Anthony Tempesta ("A. Tempesta Dep.") at 10, Docket # 25-2.) He testified that the sump pump ran constantly. (*Id.* at 12.) Anthony testified that he did not know exactly what was wrong with the sump pump; all he knew about the issue was that "instead of going through the underground tunnel, [water] was coming out the top." (*Id.* at

10

13.) This evidence is sufficient to create a fact issue concerning the defective condition of the defendant's sump pump and precludes summary judgment.

Regarding causation, Anthony Tempesta testified that it had not snowed or rained the day or night before his wife's accident and he observed that his driveway, the public sidewalk in front of his driveway, as well as the apron were visibly clean. (*Id.* at 27-28.) Anthony testified that 10 to 15 minutes after Nicole was taken away in an ambulance, he observed that she fell on a very thin sheet of glare ice that must have appeared overnight because it was not there the day before. (*Id.* at 34.) Anthony took photographs of the area on the day of Nicole's accident that show a sheet of ice around the area where the sump pump connection is located. (*Id.* at 41; Affidavit of Gregory A. Pitts ¶ 3, Exh. B, Exh. 12 to A. Tempesta Dep., Docket # 27-1.) Anthony also testified that his photographs depicted the ice from 3206 "completely connected to all the ice on the sidewalk . . . show[ing] a path of ice all the way down their driveway to the sidewalk." (A. Tempesta Dep. at 37.) He further testified that the photographs showed "an actual flow where water [was] running down the apron" from the 3206 property and the fact that the rest of the neighboring properties' "sidewalks, aprons, [and] driveways [were] dry as a bone." (*Id.* at 37-38, Exhs. 6-12 to A. Tempesta Dep.)

This evidence is sufficient to create a fact issue concerning whether the allegedly defective sump pump allowed water to accumulate and freeze on the public sidewalk, which caused Nicole to slip and fall. Thus, because genuine issues of material fact remain for trial on the underlying defective condition and causation issues, Freddie Mac is not entitled to prevail as a matter of law on summary judgment.

For these reasons, Freddie Mac's motion for summary judgment as to the Tempestas' negligence claim is denied.

   2.   *Loss of Consortium Claim*

A loss of consortium is a derivative claim under Wisconsin law and Anthony Tempesta's right to recover is derived from the injury suffered by his spouse. *Finnegan ex rel. Skoglind v. Wisconsin Patients Compensation Fund*, 2003 WI 98, ¶ 26, 263 Wis. 2d 574, 588, 666 N.W.2d 797, 804-05. Because summary judgment is denied as to the negligence claim, Freddie Mac's motion for summary judgment as to Anthony Tempesta's loss of consortium claim is also denied.

   3.   *Nuisance Claim*

A nuisance exists if there is a condition or activity that unduly interferes with the private use and enjoyment of land or a public right. *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 30, 277 Wis. 2d 635, 659, 691 N.W.2d 658, 670. In considering nuisance in the context of an injury sustained as the result of a fall on a public sidewalk abutting a property, the Wisconsin Supreme Court stated that an "abutting landowner is not liable unless his active negligence created or contributed to the creation of the dangerous condition which might otherwise constitute an actionable nuisance." *Jasenczak v. Schill*, 55 Wis. 2d 378, 382, 198 N.W.2d 369, 371 (1972).

Freddie Mac argues that because the Tempestas cannot establish that the sump pump was defective or that any conduct on the part of Freddie Mac lead to a defective condition in the sump pump, it cannot be liable for an alleged nuisance. (Defs.' Br. at 9.) As with the Tempestas' negligence claim, genuine issues of material fact exist regarding the underlying

defective condition of the sump pump; thus, Freddie Mac's motion is also denied as to the nuisance claim.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 22) is **DENIED**.

Dated at Milwaukee, Wisconsin this 10th day of August, 2016.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge