UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICOLE TEMPESTA and ANTHONY TEMPESTA,

    Plaintiffs,

UNITED HEALTHCARE INSURANCE COMPANY,

    Involuntary Plaintiff,

    v.        Case No. 15-CV-321

SCOTTSDALE INDEMNITY COMPANY and
FEDERAL HOME LOAN MORTGAGE CORPORATION,

    Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION

Nicole and Anthony Tempesta sue Scottsdale Indemnity Company and Federal Home Loan Mortgage Corporation ("Freddie Mac") for injuries Nicole Tempesta sustained when she slipped and fell on ice located on the sidewalk at the end of her driveway. The Tempestas contend that the ice resulted from a defective sump pump at an adjacent property and that Freddie Mac is liable for their damages based on its acquisition of title of the property via foreclosure a few months earlier. The defendants moved for summary judgment on the Tempestas' claims. I denied the defendants' motion. Presently before me is the defendants' motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). For the reasons I explain below, the defendants' motion is denied.

As an initial matter, the defendants incorrectly bring their motion pursuant to Fed. R. Civ. P. 59(e). Rule 59(e) allows a party to move the court to alter or amend a judgment within 28 days following the entry of the judgment. Because there has been no judgment entered in this case, the defendants' motion is properly brought under Fed. R. Civ. P. 54(b), which allows a court to exercise its inherent authority to reconsider nonfinal orders. *See Civix-DDI, LLC v. Hotels.com, LP*, 904 F. Supp. 2d 864, 866 (N.D. Ill. 2012) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretions of the . . . judge").

A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co. .,* 561 F.Supp. 656, 665-66 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984)). While "[a] court has the power to revisit prior decisions of its own," courts "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618 n.8 (1983)). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *United Air Lines, Inc. v. ALG, Inc.,* 916 F. Supp. 793, 795 (N.D.Ill. 1996).

The defendants argue that the court erred in three ways. First, the defendants argue that the court incorrectly assumed that Freddie Mac was a landlord with a right to enter the property when in fact Freddie Mac could not enter the property without court assistance during the eviction process. Second, the defendants argue that the court incorrectly believed

2

Case 2:15-cv-00321-NJ    Filed 10/17/16    Page 2 of 6    Document 40

an unrelated water issue corroborated the alleged sump pump defect. And third, they argue that the court erred in concluding that the sump pump may have been defective when the Tempestas failed to provide any expert evidence or testimony to establish a defect.

As to the first issue, the defendants argue that the court incorrectly utilized Wisconsin landlord-tenant law to find that as the property owner, Freddie Mac had a statutory right to enter the property with notice and at a reasonable time. While the defendants acknowledge that they previously presented and argued the issue by citing Wisconsin landlord-tenant law and referring to Freddie Mac as the "putative landlord," the defendants now argue that Wisconsin Stat. ch. 846, which governs foreclosure proceedings, precluded them from entering the property prior to the eviction of the property's occupant.

Even assuming it was incorrect to liken Freddie Mac to a landlord in this situation, the defendants have failed to show a manifest error of law. The defendants cite Wis. Stat. § 846.17 for the proposition that Freddie Mac had to seek a writ of assistance from the court to gain possession of the property. Wis. Stat. § 846.17 provides that upon a sale being made through foreclosure, the purchaser "shall be let into the possession of the premises so sold on production of such deed or a duly certified copy thereof, and the court may, if necessary, issue a writ of assistance to deliver such possession." Nowhere in this statute does it state, however, that Freddie Mac, as the property's owner, had no right to enter the property under any circumstances. The defendants cite no legal authority to support the statement that pursuant to Wisconsin's foreclosure procedures, property owners are precluded from entering their property until the property is vacated. Nor do the defendants provide authority stating that property owners who obtain their property via foreclosure are somehow absolved of their duty to repair the property as established in *Adlington v. City of*

*Viroqua*, 155 Wis. 472, 144 N.W. 1130, 1133 (1914) ("Counsel overlook the fact that the duty to repair is imposed on the owner. Therefore the fault which rendered the manner of discharging the water from appellants' premises unreasonable and negligent, was their own.").

Next, the defendants argue the court misconstrued the evidence by conflating two distinct alleged water issues to conclude that Freddie Mac might have had constructive knowledge of the alleged sump pump defect. The defendants argue that Anthony Tempesta expressly admitted that the alleged water issue relating to the underground discharge pipe causing water to collect in the cul de sac was separate and distinct from the alleged sump pump defect. However, Anthony Tempesta testified in response to the question, "Why don't you tell me about when you first noticed this issue with the sump pump,"

> Well, it had been, I would say, a few years prior to the incident that we're here about today, I had started to complain not solely of ice but of water year-round. There was so much water that we grew algae in our curb line, and it smelled like a pond. Constant water from that property. So I did call the City of Racine. I called multiple departments from the City of Racine about that.

(Riordan Decl. ¶ 4, Exh. B, Deposition of Anthony Tempesta at 9, Docket # 25-2.) Anthony Tempesta further testified that the problems with the sump pump were "constant from the day we moved in," although he testified that the issue with the sump pump "shoot[ing] straight up in the air" did not start until 2010 or 2011. (*Id.* at 10.) Thus, as I previously found, a fact finder could consider (as one piece of evidence among others) that the Tempestas had been experiencing difficulties with the sump pump for years and determine that Freddie Mac should have known about the alleged defect and remedied it.

The defendants further argue that the court erred by considering as a factor in determining the question of whether Freddie Mac exercised ordinary care in the

4

maintenance of the premise the fact that the Tempestas notified the City of Racine about the ice problem originating from the 3206 Lakeview Circle property. The defendants argue the Tempestas offered no meaningful evidence on this point. As previously addressed, notice of the alleged defect is a relevant factor to consider in whether Freddie Mac exercised ordinary care in the maintenance of the premises. *See Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. 2d 734, 745, 284 N.W.2d 55, 61 (1979). The fact that the Tempestas had notified the City of Racine about the ice problem originating from the 3206 Lakeview Circle property is again simply one piece of evidence, among others, that a fact finder could consider in determining whether Freddie Mac should have known about the alleged defect and remedied it. As I previously stated, none of this is to say that the Tempestas will or will not ultimately prevail. But, because no one factor is dispositive and there are many factors to be considered in deciding whether the owner exercised ordinary care, summary judgment is not appropriate in this case.

The defendants' third claimed error is simply a restating of an argument previously rejected by the court. The defendants argue that the Tempestas offered no expert testimony to establish a defect in the sump pump. They further argued that the court incorrectly seemingly applied *res ipsa loquitur* to this case. But that is not what I found. I did not infer negligence based on the nature of the accident. Rather, I found that the Tempestas' observations could create a fact issue concerning whether the sump pump was defective. In other words, the Tempestas could offer evidence of their own observations regarding the functioning of the sump pump. But whether or not their observations are sufficient to persuade a fact-finder that the sump pump was defective is an issue for another day. For now it is sufficient that there is a disputed issue of material fact on the question.

5

Case 2:15-cv-00321-NJ   Filed 10/17/16   Page 5 of 6   Document 40

Further, the defendants have not established that expert testimony is required in this situation. Unlike the cases cited by the defendants (involving a generator described as a "massive, complicated piece[] of machinery which [is] not familiar to the average person," an internal combustion engine, an air bag, and a medical malpractice case), (Defs.' Br. at 7-8, Docket # 36), a sump pump is not similarly complicated. Once again, the Tempestas' observations are sufficient to create a fact issue concerning the defective condition of the sump pump. Because the defendants have failed to meet their burden of showing a manifest error of law or fact, their motion for reconsideration is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for reconsideration (Docket # 36) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk of court will contact the parties to schedule a scheduling conference.

Dated at Milwaukee, Wisconsin this 17th day of October, 2016.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge